Robert T. Stewart (Nev. Bar No. 13770)
rtstewart@foley.com
Nicholas D. Sauer (*pro hac vice* forthcoming)
nick.sauer@foley.com
FOLEY & LARDNER LLP
95 South State Street, Suite 2500
Salt Lake City, Utah 84111
Phone: (801) 401-8900
Fax: (385) 799-7576
*Attorneys for Plaintiffs KSCGP Manager LLC and KSCGP Investor LLC*

Adam Fulton (Nev. Bar No. 11572)
afulton@jfnvlaw.com
JENNINGS & FULTON, LTD
2580 Sorrel Street
Las Vegas, NV 89146
Phone: (702) 979-3565
Fax: (702) 362-2060
*Designated Nevada counsel only for Plaintiffs pursuant to LR IA 11-1(b)(2)*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KSCGP MANAGER LLC, a Utah limited liability company; KSCGP INVESTOR LLC, a Utah limited liability company, | Case No. 2:25-cv-01817 |
| Plaintiffs, | **COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| LAWRENCE JATSEK, an individual; XCA MANAGEMENT LLC, a Delaware limited liability company, | |
| Defendants. | |

Plaintiffs KSCGP Manager LLC and KSCGP Investor LLC complain against Defendants Lawrence Jatsek and XCA Management LLC as follows:

**INTRODUCTION**

1. This is a lawsuit about a businessman who defrauded his business partner on a real estate project and now refuses to provide an accounting of his fraud. The developer is Lawrence Jatsek. The partner is Kensington Stern, a family office managed by David Nielsen. The project is the development of property near the Las Vegas Arts District.

**PARTIES**

2. **923 Properties LLC** is a Delaware limited liability company doing business in Nevada. It was formed in or around June 2022 for the primary purpose of owning and developing eight adjoining parcels of real property located near the Arts District in Las Vegas, Nevada. The manager of 923 Properties LLC is 923 Properties Manager LLC. Lawrence Jatsek ("Jatsek") and his alter ego entity, XCA Management LLC, acted as a manager of 923 Properties LLC at all relevant times. KSCGP Investor LLC is a member of 923 Properties LLC. 923 Properties LLC is governed by a written limited liability company agreement (the "923 Properties LLC Agreement").

3. **923 Properties Manager LLC** is a Delaware limited liability company doing business in Nevada. It was formed in or around June 2022 for the primary purpose of managing 923 Properties LLC. 923 Properties Manager LLC has two co-managers and two members: XCA Management LLC and KSCGP Manager LLC. Jatsek and his alter ego entity, XCA Management LLC, acted as a manager of 923 Properties Manager LLC at all relevant times. 923 Properties Manager LLC is governed by a written limited liability company agreement (the "923 Properties Manager LLC Agreement").

4. **XCA Management LLC** is a Delaware limited liability company doing business in Nevada. It was formed by Jatsek for the primary purpose of being a co-manager and member of 923 Properties Manager LLC. At all relevant times herein, it was managed by Jatsek and it was the alter ego of Jatsek.

5. **Lawrence Jatsek** is an individual residing in California and doing business in Nevada.

6. Jatsek and XCA Management LLC are collectively referred to herein as "Defendants."

7. **KSCGP Manager LLC** is a Utah limited liability company. It was formed by Kensington Stern for the primary purpose of being a co-manager and member of 923 Properties Manager LLC. It is managed by David Nielsen ("Nielsen").

8. **KSCGP Investor LLC** is a Utah limited liability company. It was formed by

Kensington Stern for the primary purpose of being a member of 923 Properties LLC. It is managed by Nielsen.

9. The "KS" in KSCGP Manager LLC and KSCGP Investor LLC stands for "Kensington Stern." KSCGP Manager LLC and KSCGP Investor LLC are collectively referred to herein as "Kensington" or "Plaintiffs."

10. Nielsen acted as a manager of Kensington at all relevant times herein.

## JURISDICTION AND VENUE

11. The Court has subject matter diversity jurisdiction under 28 U.S.C. § 1332 because this case is between citizens of different states and the controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

12. The Court has personal jurisdiction over the Defendants pursuant to the jurisdiction and venue provisions in the 923 Properties Manager LLC Agreement. Additionally, the Defendants' contacts with Nevada subject them to this Court's personal jurisdiction.

13. Venue is proper in this Court pursuant to the jurisdiction and venue provisions in the 923 Properties Manager LLC Agreement. Additionally, venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, and the real property at issue is located in this District.

## FACTUAL BACKGROUND

**The Property**

14. The project involves eight contiguous parcels of land in Las Vegas near the Arts District, collectively covering over two acres. The addresses and parcel numbers are as follows:

- 727 S 9th Street (13934812003)
- 717 S 9th Street (13934810074)
- 715 S 9th Street (13934810075)
- 716 S 10th Street (13934810105)
- 714 S 10th Street (13934810104)
- 712 S 10th Street (13934810103)
- 710 S 10th Street (13934810102)

- 700 S 10th Street (13934810101)

**The Venture**

15. Jatsek and Nielsen met in 2021. Jatsek presented himself to Nielsen as a successful real estate developer with a family office. Jatsek told Nielsen that he had been involved in the construction industry from a young age as a laborer and had worked his way up as a developer. He told Nielsen that he was the managing partner at CRE Development Capital LLC, a real estate development company in Phoenix, Arizona, and that he had successfully completed a handful of development projects. He also told Nielsen that he was currently working on a hotel-condo real estate project in Phoenix.

16. Jatsek and Nielsen discussed partnering on potential real estate deals and other investment opportunities. Jatsek presented to Nielsen a real estate project in Las Vegas that Jatsek said he was moving forward on. The project was to purchase the property near the Arts District and develop a multifamily unit. Jatsek pitched the project to Nielsen as a 50-50 venture between Jatsek and Kensington.

17. Nielsen vetted Jatsek. He spoke to some individuals in the industry, conducted online research, and visited Jatsek's purported hotel-condo project in Phoenix. He met with Jatsek in Las Vegas to view the property. Then, in or around June 2022, Nielsen decided to move forward with Jatsek on the venture.

**Formation of 923 Properties LLC and 923 Properties Manager LLC**

18. To begin the venture, Jatsek formed 923 Properties LLC to purchase and own the property. KSCGP Investor LLC became a member of 923 Properties LLC. Jatsek likewise became a member through his various closely controlled entities.

19. Jatsek formed 923 Properties Manager LLC, which is the manager of 923 Properties LLC. KSCGP Manager LLC became a member and co-manager of 923 Properties Manager LLC. XCA Management LLC, an alter ego of Jatsek, also became a member and co-manager of 923 Properties Manager LLC.

20. 923 Properties LLC is governed by the 923 Properties LLC Agreement. Nielsen and Jatsek signed that agreement. Some of the terms of the 923 Properties LLC Agreement are as

follows.

21. First, the manager of 923 Properties LLC shall perform its duties as manager in good faith, in a manner reasonably believed to be in the best interest of the company, and with such care as an ordinary prudent person in a similar position would use under similar circumstances.

22. Second, the manager shall cause the books and records of the company to be kept, and the financial position and the results of its operations to be recorded, in accordance with the accounting methods followed for federal income tax purposes.

23. Third, the books and records of the company shall reflect all of the company's transactions and shall be appropriate and adequate for the company's business.

24. Fourth, each member and manager has the right upon reasonable request to inspect the books and records and to obtain a copy of the company's tax returns.

25. Fifth, the 923 Properties LLC Agreement shall be enforced, governed by, and construed in accordance with Delaware law.

26. Sixth, a prevailing party in a proceeding arising under the 923 Properties LLC Agreement is entitled to recover all reasonable legal fees and costs incurred.

27. 923 Properties Manager LLC is governed by the 923 Properties Manager LLC Agreement. Nielsen and Jatsek signed that agreement. Some of the terms of that agreement are as follows.

28. First, KSCGP Manager LLC and XCA Management LLC are members and co-managers of 923 Properties Manager LLC.

29. Second, all decisions of the company must be agreed to by the co-managers before any co-manager may undertake an action on behalf of the company.

30. Third, the co-managers shall perform their rights and obligations consistent with the standard of care and skill of a similarly situated manager for similar investments.

31. Fourth, the co-managers shall meet periodically to discuss the ongoing business of the company and the development of the property, with such meetings to be held no less frequently than monthly.

32. Fifth, if a co-manager commits intentional fraud relating to the company or project, then the other co-manager may remove the fraudulent co-manager, and the fraudulent co-manager will no longer be entitled to manage or be involved with the day-to-day activities of the company, and the fraudulent co-manager will be liable to the company, the property owner, and its members for any losses or damages suffered as a result of the fraud.

33. Sixth, the co-managers shall devote such time to the company as is necessary to manage and supervise the business and affairs of the company.

34. Seventh, if a member fails to comply with the obligations imposed by the agreement, then the company and any other members will be irreparably damaged and will not have an adequate remedy at law.

35. Eighth, the company and any such co-manager shall be entitled to injunctive relief to enforce the obligations under the agreement, and none of the parties to the agreement shall oppose the seeking of injunctive relief or specific performance on the basis that the party seeking such remedy has an adequate remedy of law or an award of specific performance is not an appropriate remedy.

36. Ninth, the company shall keep appropriate books and records with respect to the company's business.

37. Tenth, each of the members and co-managers shall be entitled to conduct an audit of the books and records of the company.

38. Eleventh, any person having rights under the agreement shall be entitled to seek to enforce such rights specifically and to recover damages by reason of any breach of any provision of the agreement and to exercise all other rights granted by law.

39. Twelfth, the agreement is governed by Delaware law.

40. Thirteenth, any suit, action, or proceeding arising out of matters related to the agreement shall be brought in Nevada.

41. Fourteenth, a prevailing party in a proceeding arising under the agreement shall be entitled to attorney fees and other costs incurred.

**The Project**

42. 923 Properties LLC purchased the property in or around June 2022. To do so, 923 Properties LLC obtained a multimillion-dollar loan from a third-party lender. The loan required monthly payments on the principal and interest.

43. After purchasing the property, Nielsen and Jatsek held weekly meetings, including with design professionals and project managers. Nielsen and Jatsek hired contractors to work on the project, including an architecture firm, Pappageorge Haymes Partners. Nielsen and Jatsek conducted site visits with contractors and worked with city officials on the project. Nielsen and Jatsek worked together on an often-daily basis. The project progressed relatively smoothly.

**Jatsek Embezzled Kensington's Funds and Failed to Pay Contractors**

44. Nielsen and Jatsek agreed that Jatsek would be the primary point of contact for the contractors and the lender. They agreed that Jatsek would receive the contractor invoices and then promptly inform Nielsen about the invoices and necessary cash calls. They agreed that Kensington and Jatsek (including through Jatsek's closely controlled entity, XCA Management LLC) would split 50-50 percent all expenses related to the project based on their purported 50-50 percent ownership of the property and project. These expenses included the contractor invoices and payments toward the loan. They agreed that Defendants would possess and maintain the financial books and records of the project, the operating account for 923 Properties LLC, 923 Properties LLC, and 923 Properties Manager LLC.

45. Based on that arrangement, throughout 2023 and 2024, Jatsek repeatedly informed Nielsen of due contractor invoices and loan payments. In response, Nielsen timely paid Kensington's 50 percent share of the expenses. Nielsen did so by wiring funds from Kensington's bank account into the business operating account for 923 Properties LLC, which Jatsek created, controlled, and agreed to use to pay project expenses. During this time, Jatsek represented to Nielsen that Jatsek was timely and completely paying all contractor invoices and loan payments. Jatsek was lying.

46. A specific illustration of Jatsek's fraud is as follows. On or around August 24,

2023, Jatsek represented to Nielsen that there was approximately $800,000 in due contractor invoices spanning from March 2023 through July 2023. Jatsek represented to Nielsen that approximately $549,138.22 of that total amount was for invoices from the architecture firm. Jatsek represented to Nielsen that Kensington's 50 percent share of the total outstanding invoices for all due contractor invoices was $343,808.11. Jatsek represented to Nielsen that, based on their agreement and prior practice of splitting expenses 50-50 percent, Jatsek would pay the contractor invoices using the funds provided by Nielsen and Jatsek. In reliance on and in response to these representations from Jatsek, on or around September 1, 2023, Nielsen wired $343,808.11 out of Kensington's bank account and into the operating account for 923 Properties LLC. Jatsek then falsely represented to Nielsen that Jatsek used those deposited funds from Kensington, along with Jatsek's 50 percent contribution of funds, to fully pay the due contractor invoices.

47. In reality, after Nielsen wired the $343,808.11 into the operating account, Jatsek paid off only a fraction of the invoices from the architecture firm, leaving over $300,000 in unpaid invoices to the architecture firm. Jatsek never informed Nielsen that he did not completely pay the invoices. Instead, Jatsek falsely represented to Nielsen that he used Kensington's funds, along with Jatsek's 50 percent contribution of funds, to completely pay the invoices.

48. On information and belief, Jatsek embezzled hundreds of thousands of dollars deposited by Kensington into the operating account for 923 Properties LLC, and Jatsek used the embezzled funds for his personal benefit.

49. On information and belief, Defendants did not make their 50 percent contribution of funds toward outstanding contractor invoices and loan payments.

50. After Nielsen deposited the $343,808.11 into the operating account, Jatsek continued to receive additional invoices from contractors. For example, from the architecture firm, Jatsek received multiple invoices for work spanning from June 2023 through October 2024 totaling approximately $140,467.62.

51. Jatsek did not inform Nielsen of these additional contractor invoices, and Jatsek

did not pay these additional invoices.

**Jatsek Concealed the Architecture Firm's Lawsuit and Notice of Lien**

52. In February 2024, the architecture firm filed a notice of lien on the property with the Clark County Recorder. The stated amount of the lien is approximately $441,586.73.

53. In August 2024, the architecture firm filed a lawsuit for unpaid invoices. The lawsuit is pending in the Eighth Judicial District Court, Clark County, Nevada, Case Number A-24-899474-C. The named defendants in the lawsuit are Jatsek, 923 Properties LLC, 923 Properties Manager LLC, and CRE Development Capital LLC. The lawsuit alleges that the defendants breached their contract to pay the architecture firm for work performed. The lawsuit alleges that there is an outstanding balance of $441,586.73 owed to the architecture firm. The lawsuit requests that the property be sold at foreclosure and that the proceeds of the foreclosure sale be applied to the amount owed to the architecture firm.

54. Jatsek was served with the complaint and summons in that lawsuit on or around September 22, 2024. Jatsek also accepted service of the complaint and summonses on behalf of 923 Properties LLC and 923 Properties Manager LLC. On October 18, 2024, Jatsek caused an answer to be filed in the lawsuit on behalf of Jatsek, 923 Properties LLC, and 923 Properties Manager LLC. The answer was filed by a law firm apparently retained by Jatsek. The lawsuit has been pending and proceeding toward trial without Nielsen or Kensington being informed or consulted. The law firm retained by Jatsek has never spoken with Nielsen or Kensington about the lawsuit.

55. Jatsek did not disclose to Kensington the notice of lien filed in February 2024. Jatsek did not promptly disclose to Kensington the lawsuit filed in August 2024. Jatsek did not disclose to Kensington that he had retained a law firm to represent 923 Properties LLC and 923 Properties Manager LLC in the lawsuit.

**Kensington Discovered Jatsek's Fraud**

56. Throughout 2024, not knowing about the notice of lien and lawsuit filed by the architecture firm, Nielsen worked with Jatsek to explore opportunities to sell the property and project. Nielsen received immediate interest in the project.

57. But in November 2024, one interested party discovered the notice of lien filed by the architecture firm and informed Nielsen. That was Nielsen's first discovery of the unpaid contractor invoices and the notice of lien and lawsuit filed by the architecture firm.

**Jatsek Cut Off All Communication with Kensington**

58. Upon learning of the unpaid contractor invoices, Nielsen immediately tried to contact Jatsek to request the books and records of the project, including an accounting of the operating account and contractor invoices. Jatsek refused to comply with those repeated requests. To this day, Jatsek has not provided Kensington with the books and records.

59. Over the past several months, Jatsek has cut off all communication with Nielsen. Jatsek has not responded to any of Nielsen's emails, phone calls, text messages, or letters.

## CAUSES OF ACTION
### COUNT ONE
### Fraudulent Misrepresentation

60. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

61. Defendants intentionally and knowingly represented false material facts as true to Plaintiffs. Defendants did so with the intention of inducing Plaintiffs to deposit Plaintiffs' money into the project's operating account, which Defendants intended to embezzle and use for their personal benefit.

62. Specifically, on or around August 24, 2023, Defendants represented to Plaintiffs that there was approximately $800,000 owed to multiple contractors for outstanding invoices spanning from March 2023 through July 2023. Defendants represented to Plaintiffs that approximately $549,138.22 of that total amount was for invoices from the architecture firm. Defendants represented to Plaintiffs that Plaintiffs' 50 percent share of the total outstanding invoices for all contractors was $343,808.11.

63. Defendants intentionally and knowingly misrepresented to Plaintiffs that Defendants would fully pay the contractor invoices using the funds provided by Plaintiffs, as well as Defendants' 50 percent contribution.

64. In reasonable reliance on and in response to these representations from

Defendants, on or around September 1, 2023, Plaintiffs wired $343,808.11 out of Plaintiffs' bank account and into the operating account for 923 Properties LLC, which Defendants controlled.

65. Defendants paid off only a fraction of the invoices from the architecture firm, leaving over $300,000 in unpaid outstanding invoices. Defendants intentionally and knowingly misrepresented to Plaintiffs that Defendants had used the funds from Plaintiffs, along with Defendants' 50 percent contribution, to completely pay the outstanding invoices.

66. On information and belief, Defendants embezzled and used for their personal benefit hundreds of thousands of dollars deposited by Plaintiffs into the operating account.

67. On information and belief, Defendants did not make their 50 percent contribution payments toward outstanding contractor invoices and loan payments, despite misrepresenting to Plaintiffs that they had.

68. Defendants actively concealed and prevented Plaintiffs from discovering the truth, including by refusing to produce the requested books and records for the project, the operating account, 923 Properties LLC, and 923 Properties Manager LLC.

69. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiffs suffered significant damages in an amount to be proven at trial.

70. Defendants' fraudulent misrepresentations were willful and malicious, and Plaintiffs are entitled to an award of punitive damages and attorney fees.

### COUNT TWO
### Fraudulent Concealment

71. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

72. Defendants actively concealed and prevented Plaintiffs from discovering the truth. Defendants also remained silent despite a duty to tell the truth to Plaintiffs.

73. Specifically, Defendants concealed that Defendants had embezzled for their personal benefit hundreds of thousands of dollars deposited into the operating account by Plaintiffs.

74. Defendants concealed that Defendants did not make their 50 percent contribution payments toward outstanding contractor invoices and loan payments.

75. Defendants concealed that Defendants continued to receive additional invoices from contractors but knowingly failed to pay those additional contractor invoices.

76. Defendants concealed the requested books and records for the project, operating account, 923 Properties LLC, and 923 Properties Manager LLC.

77. Defendants intentionally and knowingly prevented Plaintiffs from discovering the concealed facts above by misrepresenting to Plaintiffs that Defendants used the funds from Plaintiffs, along with Defendants' 50 percent contribution, to completely pay the outstanding invoices and loan payments and by refusing to produce the requested books and records.

78. As co-managers and members who exercised control over the business affairs of 923 Properties LLC and 923 Properties Manager LLC, Defendants owed a duty to inform Plaintiffs of the concealed facts above.

79. As a direct and proximate result of Defendants' fraudulent concealment, Plaintiffs suffered significant damages in an amount to be proven at trial. Defendants' fraudulent concealment was willful and malicious, and Plaintiffs are entitled to an award of punitive damages and attorney fees.

## COUNT THREE
### Breach of Fiduciary Duties of Care and Loyalty

80. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

81. As co-managers and members who exercised control over the business affairs of 923 Properties LLC and 923 Properties Manager LLC, Defendants owed fiduciary duties to Plaintiffs, including the duties of care and loyalty.

82. Defendants breached their fiduciary duties to Plaintiffs. Defendants intentionally and knowingly acted in their own best interest to the direct detriment of 923 Properties LLC, 923 Properties Manager LLC, and Plaintiffs.

83. Defendants intentionally and knowingly misrepresented to Plaintiffs that Defendants were timely and completely paying all contractor invoices and loan payments. As detailed above, Defendants paid off only a fraction of the contractor invoices and loan payments, and Defendants did not inform Plaintiffs that they failed to completely pay the invoices and loan

payments, even though Defendants knew of that failure. Instead, Defendants intentionally misrepresented to Plaintiffs that they had used Plaintiffs' funds, along with Defendants' 50 percent contribution, to completely pay invoices and loan payments.

84. On information and belief, Defendants embezzled for their personal benefit hundreds of thousands of dollars deposited by Plaintiffs into the operating account. Further, on information and belief, Defendants did not make their 50 percent contribution payments toward outstanding contractor invoices and loan payments. Further, Defendants continued to receive additional invoices from contractors, but Defendants did not inform Plaintiffs of these additional contractor invoices, and Defendants knowingly failed to pay these additional invoices.

85. Defendants possess and maintain the financial books and records of the project, operating account, 923 Properties LLC, and 923 Properties Manager LLC. Defendants refused to make available the requested books and records, which they control, to Plaintiffs.

86. As a direct and proximate result of Defendants' breaches of fiduciary duties, Plaintiffs suffered significant damages in an amount to be proven at trial. Defendants' breaches of fiduciary duties were willful and malicious, and Plaintiffs are entitled to an award of punitive damages and attorney fees.

**COUNT FOUR**
**Breach of Contract**

87. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

88. Plaintiffs and Defendants were parties to the 923 Properties LLC Agreement and 923 Properties Manager LLC Agreement.

89. Plaintiffs performed their obligations under the contracts.

90. As detailed above, Defendants breached the following material terms of the contracts.

91. First, Defendants breached the term that the manager must manage in good faith and in a manner reasonably believed to be in the best interest of the company and with such care as an ordinary prudent person in a similar position would use under similar circumstances.

92. Second, Defendants breached the terms that the manager shall cause the books

and records of the company to be kept and the financial position and the results of its operations to be recorded in accordance with the accounting methods followed for federal income tax purposes; and the manager shall ensure the books and records of the company reflect all the company's transactions and be appropriate and adequate for the company's business.

93. Third, Defendants breached the term that decisions of the company must be agreed to by the co-managers before any co-manager may undertake an action on behalf of the company.

94. Fourth, Defendants breached the term that the manager shall perform its rights and obligations consistent with the standard of care and skill of a similarly situated manager for similar investments.

95. Fifth, Defendants breached the term that the co-managers shall meet periodically to discuss the ongoing business of the company and the development of the property, with such meetings to be held no less frequently than monthly.

96. Sixth, Defendants breached the term that the co-managers shall devote such time to the company as is necessary to manage and supervise the business and affairs of the company.

97. Seventh, Defendants breached the term that the company shall keep appropriate books and records with respect to the company's business.

98. As a direct and proximate result of Defendants' breaches of contract, Plaintiffs suffered significant damages in an amount to be proven at trial. Plaintiffs are entitled an award of attorney fees.

**COUNT FIVE**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

99. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

100. Defendants, by virtue of contracting with Plaintiffs, covenanted to refrain from unfairly interfering with Plaintiffs' right to receive the benefits of the contract and to act in good faith at all times.

101. Defendants breached that covenant.

102. Defendants fraudulently misrepresented and concealed material facts to Plaintiffs,

induced Plaintiffs to deposit funds into the project's operating account, and, upon information and belief, embezzled those funds for their personal benefit.

103. Defendants withheld information from Plaintiffs and did not consult with Plaintiffs about material information about the project, operating account, contractor invoices, loan payments, liens, lawsuits, 923 Properties LLC, and 923 Properties Manager LLC.

104. Defendants' actions severely interfered with Plaintiffs' right to receive the benefits of the contracts, including by impairing progress on the project, embezzling funds from the project, triggering a notice of lien and lawsuit against the project, cutting off all communication with Plaintiffs, and inhibiting Plaintiffs' ability to take informed and authorized action toward the project.

105. As a direct and proximate result of the Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiffs suffered significant damages in an amount to be proven at trial.

## COUNT SIX
### Conversion

106. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

107. Defendants converted Plaintiffs' funds.

108. Defendants induced Plaintiffs to deposit hundreds of thousands of dollars into the operating account for 923 Properties LLC, which Defendants controlled. On information and belief, Defendants then used Plaintiffs' funds for Defendants' personal benefit.

109. Defendants wrongfully exerted a distinct and intentional act of dominion by using their positions as managers and controlling members to induce Plaintiffs to deposit funds into the operating account under the guise of a business need.

110. Defendants denied Plaintiffs the use and enjoyment of Plaintiffs' money by, on information and belief, taking the money and using it for Defendants' personal benefit.

111. Plaintiffs have been excluded from their rights associated with possession and ownership of the money because of Defendants' conversion.

112. As a direct and proximate result of Defendants' conversion, Plaintiffs suffered

significant damages in an amount to be proven at trial. Plaintiffs are entitled an award of punitive damages and attorney fees.

## COUNT SEVEN
### Declaratory Judgment for Alter Ego and Piercing Corporate Veil

113. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

114. Jatsek and XCA Management LLC are alter egos of each other. Equity dictates that the corporate veil be pierced such that Jatsek and XCA Management LLC be held jointly and severally liable for the misconduct alleged in this complaint.

115. Jatsek controls, governs, and manages XCA Management LLC.

116. On information and belief, Jatsek did not adequately capitalize XCA Management LLC.

117. On information and belief, XCA Management is not solvent.

118. On information and belief, formalities were not observed for XCA Management LLC.

119. On information and belief, Jatsek siphoned and comingled XCA Management LLC's funds.

120. On information and belief, XCA Management LLC simply functioned as a façade for Jatsek. XCA Management is a sham and existed for no other purpose than as a vehicle for Jatsek's fraud.

121. Jatsek and XCA Management LLC share a unity of interest and ownership such that they are inseparable from each other. XCA Management LLC operates at Jatsek's whim without regard for anyone else's input or best interest.

122. Adherence to the notion that XCA Management LLC is separate from Jatsek or vice versa would sanction fraud and promote manifest injustice.

123. Plaintiffs seek a declaratory judgment that XCA Management LLC and Jatsek are alter egos of each other and are jointly and severally liable.

## COUNT EIGHT
### Accounting

124. Plaintiffs incorporate by reference the allegations set forth in the preceding

-16-

paragraphs as though fully set forth herein.

125. As alleged above, Defendants possess and maintain the books and records for the project, operating account, 923 Properties LLC, and 923 Properties Manager LLC.

126. As alleged above, Defendants owe fiduciary duties to Plaintiffs, including the duties of candor, loyalty, care, and good faith.

127. As alleged above, the agreements governing 923 Properties LLC and 923 Properties Manager LLC require Defendants to keep the books and records in accordance with generally accepted accounting methods, and the books and records shall reflect all of the company's transactions, and each member and manager has the right upon reasonable request to inspect the books and records.

128. Plaintiffs are members and managers of 923 Properties LLC and 923 Properties Manager LLC and have requested and demanded to inspect the books and records.

129. Defendants have refused to comply with those requests and demands in violation of their agreements and duties noted above.

130. As a direct and proximate result of Defendants' refusal to make available the books and records, Plaintiffs suffered significant damages in an amount to be proven at trial. Plaintiffs are entitled an award of punitive damages and attorney fees.

131. As a direct and proximate result of Defendants' refusal to make available the books and records, Plaintiffs have suffered and will continue to suffer irreparable harm. Plaintiffs have been and will continue to be unable to account for their funds that were intended for the project. Plaintiffs have been and will continue to be unaware of invoices and payments made and owed to, for example, contractors and lenders. Plaintiffs have been and will continue to be unaware of the full extent of Defendants' embezzling, siphoning, and commingling of funds.

132. Additionally, the 923 Properties Manager LLC Agreement states that any co-manager shall be entitled to injunctive relief to enforce the obligations under the agreement.

133. Additionally, the 923 Properties Manager LLC Agreement states if a co-manager commits intentional fraud relating to the company or project, then that co-manager will no longer be entitled to manage or be involved with the day-to-day activities of the company.

134. Accordingly, an order requiring Defendants to produce the books, records, and an accounting is necessary.

135. Plaintiffs seek an order and judgment against Defendants directing Defendants to produce the books, records, and accounting for the project, operating account, 923 Properties LLC, and 923 Properties Manager LLC.

## **PRAYER FOR RELIEF**

136. Wherefore, Plaintiffs pray for relief as follows:

    i. That judgment be entered in favor of Plaintiffs and against Defendants;

    ii. That Plaintiffs be awarded compensatory damages;

    iii. That Plaintiffs be awarded fees and costs;

    iv. That Plaintiffs be awarded punitive damages;

    v. That Plaintiffs be awarded all appropriate equitable relief;

    vi. That Plaintiffs be awarded a judgment finding, concluding, and ordering that Defendants committed intentional fraud relating to the company and project, and that Defendants are removed from managing 923 Properties LLC and 923 Properties Manager LLC, and that Defendants are not entitled to manage or be involved with the day-to-day activities of 923 Properties LLC and 923 Properties Manager LLC;

    vii. That Plaintiffs be awarded the books, records, and accounting for the project, operating account, 923 Properties LLC, and 923 Properties Manager LLC;

    viii. That Plaintiffs be awarded a judgment finding, concluding, and ordering that Jatsek and XCA Management LLC are alter egos of each other and are jointly and severally liable;

    ix. That Plaintiffs be awarded pre-judgment and post-judgment interest;

    x. That Plaintiffs be awarded all other and further relief to which Plaintiffs may be entitled at law or equity.

///

DATED: September 25, 2025          FOLEY & LARDNER LLP

*/s/ Robert Stewart*
Robert T. Stewart
Nicholas D. Sauer
FOLEY & LARDNER LLP
*Attorneys for Plaintiffs KSCGP Manager LLC and KSCGP Investor LLC*

*/s/ Adam Fulton*
JENNINGS & FULTON, LTD
*Designated Nevada counsel only for Plaintiffs pursuant to LR IA 11-1(b)(2)*